1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

STEVEN GEORGE HARPER,                    No. CIV S-10-2819-CMK

        Plaintiff,

    vs.                                      <u>MEMORANDUM OPINION AND ORDER</u>

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending before the court are plaintiff's motion for summary judgment (Doc. 24) and defendant's cross-motion for summary judgment (Doc. 28).

/ / /

/ / /

/ / /

1

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on June 18, 2008.  In the application, plaintiff claims that disability began on March 12, 2008.  Plaintiff claims that disability is caused by a combination of ". . .severe L5-S1 foraminal stenosis, moderate left-sided L5-S1 foraminal stenosis, degenerative disc disease, obesity, sleep apnea, and bilateral carpal tunnel syndrome."  Plaintiff claims these impairments give rise to ". . .debilitating symptoms including chronic pain, lift/carry limitations, sit/stand/walk limitations, manipulative limitations, difficulty sleeping at night, daytime somnolence, and the need for day time naps."  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on December 1, 2009, before Administrative Law Judge ("ALJ") L. Kalei Fong.   In an April 21, 2010, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1.  The claimant has the following severe impairments: lumbar degenerative disc disease, sleep apnea, left knee bursitis, left shoulder impingement, and mild bilateral carpal tunnel syndrome;

2.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in the regulations;

3.  The claimant has the residual functional capacity to perform light work; specifically, the claimant can lift or carry 20 pounds occasionally, 10 pounds frequently; stand, walk, and sit (with normal breaks) about 6 hours in an 8-hour work day; his ability to push or pull is unlimited in the lower extremities and he is able to climb (but no ladders, ropes, or scaffolds); he can also balance, stoop, kneel, crouch, and crawl on an occasional basis; he is limited to occasional overhead reaching with the left upper extremity and he can occasionally perform gross and fine manipulation with both hands; he has no other manipulative, visual, communicative, or environmental limitations; and

4.  Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on August 17, 2010, this appeal followed.

/ / /

## II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following relevant evidence, summarized chronologically below:[1]

July 26, 2008 – Agency examining doctor Kenneth Johnson, M.D., reported on a comprehensive orthopedic evaluation.  Plaintiff listed low back pain, bilateral hand pain, left neck and shoulder pain, and left knee pain as his chief complaints.  Dr. Johnson reported the following history:

> The claimant is a 48-year-old white male, who was employed in the roofing business for over 20 years.  He presented with multiple complaints, as noted above, from prolonged work activities and other injuries.  The claimant stated that he continued in the roofing business until March 11th [2008].  His symptoms have precluded continued work.

The doctor noted that, despite plaintiff's pain symptoms, "the claimant is still independent with mobility, self care, and activities of daily living, without an assistive device or need for durable medical equipment."  At the time of the evaluation, plaintiff's only medication was over-the-counter Tylenol.  Plaintiff was taking no prescription medication for any condition.  Following an objective evaluation, Dr. Johnson provided the following functional assessment:

> The claimant can be expected to stand and walk for at least six hours during an eight-hour workday, with postural adjustments needed for the back and knee.
>
> The claimant can be expected to sit without restrictions, with postural adjustments needed for the back and knee.
>
> The claimant is safe to ambulate without an assistive device.
>
> The claimant can lift and carry 10 pounds or less frequently and 20 to 25 pounds occasionally.  The claimant should be able to lift 50 pounds and 100 pounds occasionally without carrying.
>
> The claimant can perform occasional bending, stooping, and crouching.
>
> The claimant can perform occasional reaching, handling, feeling, grasping, and fingering of items.

---

[1]    The court adopts plaintiff's summary of the treatment records, which is not repeated here.

3

1    The claimant has no relevant visual, communicative, or workplace
2    environmental limitations.

3    <u>August 21, 2008</u> – Agency consultative doctor H. Crowhurst, M.D,. submitted a

4    physical residual functional capacity assessment.  Dr. Crowhurst opined that plaintiff could

5    occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds.  Plaintiff could

6    sit/stand/walk for six hours in an eight-hour workday.  Plaintiff's ability to push/pull was found

7    to be unlimited.  In support of these findings, the doctor cited "[c]hronic back pain, left knee

8    pain, left shoulder impingement."  Plaintiff could occasionally perform all postural activities,

9    except he should never balance.  As to manipulative limitations, Dr. Crowhurst concluded that

10   plaintiff was limited in his ability to reach in all directions, handle, and finger.  Plaintiff's feeling

11   ability was unlimited.  The doctor explained that plaintiff was capable of occasional overhead

12   reaching with the left upper extremity, and occasional gross and fine manipulation with both

13   hands.  No visual, environmental, or communicative limitations were noted.

14   <u>October 2, 2008</u> – Plaintiff submitted an Exertion Questionnaire.  He stated that

15   he lives in a house with his life-long partner.  As to things he does on an average day, plaintiff

16   stated:

17           When I try to vacuum or do dishes I have to sit down a lot.  It
         makes my lower back hurt.  It hurts to the point that it makes it unable to
18           do them.  I have to go and sit on the couch.

19   Plaintiff stated that he experiences low back pain if he walks even one block.  Plaintiff stated that

20   he cannot climb stairs and can only lift very light items, though he stated that he carries his

21   groceries.  As to yard work, plaintiff stated that he only turns on the sprinklers and that he is

22   unable to do any other yard chores since his disability began.  He added that he sleeps poorly and

23   often has to take naps during the day.  He did not state whether or not he used assistive devices.

24   Finally, plaintiff stated:

25           . . .[M]y condition is getting worse with every day.  The pain is
         unbearable at times.  It makes it impossible for me to do any kind of work.
26

4

        January 11, 2010 – Treating physician David E. Damazo, M.D., submitted a

medical source statement.  While the doctor offered a diagnosis, he did not cite to any objective

findings.

        May 20, 2010 – Plaintiff's treating physician, Dr. Damazo, submitted a letter

regarding plaintiff's disability claim.  The doctor stated:

> I am writing this letter on behalf of Steven Harper to document the amount
> of disability that this man is experiencing.  I have taken care of Steven
> Harper since January 2010.  He has a history of working as a roofer for 20
> years.  He has a history of back pain to a bothersome extent for 15 years
> and back pain to a severe extent for 6 years.  The back pain is across the
> low back and will radiate to the buttocks and lateral thighs.  There is also
> numbness that radiates to the lateral thighs.  He feels he can sit a
> maximum of 5 minutes, stand a maximum of 5 minutes, and lift less than
> 15 lbs.
>
> On physical exam he does have radiculopathy signs with a positive
> Lasegue.  Also, a lumbar spine MRI has been performed.  This MRI is
> significant for severe right L5-S1 foraminal stenosis and moderate lift-
> sided L5-S1 foraminal stenosis that relates to discogenic change.  In
> summary, this is a man with back pain who does have documented severe
> back disease.

### III.  STANDARD OF REVIEW

        The court reviews the Commissioner's final decision to determine whether it is:

(1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

(9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must

be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

findings, or if there is conflicting evidence supporting a particular finding, the finding of the

Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

Therefore, where the evidence is susceptible to more than one rational interpretation, one of

which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

Cir. 1988).

## IV.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to

develop the record; (2) the Appeals Council failed to properly evaluate new evidence; (3) the

ALJ failed to evaluate plaintiff's obesity; (4) the ALJ improperly rejected plaintiff's testimony as

not credible; and (5) the ALJ improperly relied on vocational expert testimony which was not

based on an accurate description of plaintiff's limitations.

### A.    Duty to Develop the Record

The ALJ has an independent duty to fully and fairly develop the record and assure

that the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th

Cir. 2001).  When the claimant is not represented by counsel, this duty requires the ALJ to be

especially diligent in seeking all relevant facts.  See id.  This requires the ALJ to "scrupulously

and conscientiously probe into, inquire of, and explore for all the relevant facts." Cox v.

Califano, 587 F.2d 988, 991 (9th Cir. 1978).   Ambiguous evidence or the ALJ's own finding that

the record is inadequate triggers this duty.  See  Tonapetyan, 242 F.3d at 1150.  The ALJ may

discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting

questions to the claimant's physicians, continuing the hearing, or keeping the record open after

the hearing to allow for supplementation of the record.  See id. (citing Tidwell v. Apfel, 161 F.3d

1   599, 602 (9th Cir. 1998)).

2          Plaintiff argues: "Despite the state of the opinion evidence, the ALJ failed to order

3   an updated consultative examination in order to fully develop the record regarding Mr. Harper's

4   RFC in light of the medical treatment and radiological evidence generated after Drs. Johnson and

5   Crowhurst had formulated their RFC opinions."  The court does not agree that error occurred.

6   The duty to develop the record is triggered only where the existing evidence is either ambiguous

7   or inadequate.  Such was not the case here.  The evidence of record at the time of the

8   administrative hearing was clear and adequate to allow the ALJ to make a disability

9   determination.[2]

10          **B.**     **Evaluation by Appeals Council**

11          Plaintiff argues that the Appeals Council erred by summarily rejecting the

12   opinions of Dr. Damazo, which were submitted for the first time in connection with plaintiff's

13   appeal from the hearing decision.  According to plaintiff: "Given the nature of the new evidence,

14   and the fact that neither of the physicians' opinions upon which the ALJ relied were informed by

15   the 2008 MRI evidence and any of the medical evidence after August of 2008 , the Appeal

16   Council should have afforded the ALJ an opportunity to evaluate the new evidence, and if

17   necessary develop the record by ordering an updated consultative examination. . . ."  Defendant

18   argues that the Appeals Council is only required to review a case upon submission of new

19   evidence not originally before the ALJ when the Appeal Council finds that the ALJ's decision is

20   contrary to the weight of the evidence as a whole, including the new evidence.  Defendant states

21   that, because the Appeals Council concluded that the late-submitted evidence did not render the

22

23          [2]       As discussed below, plaintiff did in fact submit additional evidence to the Appeals
24   Council as part of his appeal from the ALJ's hearing decision.  Thus, to the extent post-hearing
     evidence existed that the ALJ did not review, such evidence was adduced to the Appeals Council
25   which concluded that the new evidence did not alter the ALJ's analysis.  Therefore, even though
     the ALJ did not consider certain pieces of post-hearing evidence, the Appeals Council did.  In
26   other words, plaintiff had the opportunity to develop the record himself by submitting the post-
     hearing evidence to the Appeals Council for its review.

1   ALJ's hearing decision contrary to the entire record, it properly considered Dr. Damazo's

2   opinions.

3           The court agrees with defendant.  Specifically, a review of Dr. Damazo's January

4   and May 2010 documents reveals that the doctor merely recited plaintiff's subjective complaints

5   without offering his own medical opinion based on minimal, if any, subjective findings.  Where

6   subjective findings are noted (i.e., in the May 2010 letter), no opinion as to the effect of these

7   findings on plaintiff's ability to work is rendered.  There simply was nothing in Dr. Damazo's

8   2010 documents which undermined the ALJ's hearing decision.

9           **C.    Plaintiff's Obesity**

10          In 1999, obesity was removed from the Listing of Impairments.[3]  Obesity may still

11  enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's

12  musculoskeletal, respiratory, or cardiovascular system."  Celaya v. Halter, 332 F.3d 1177, 1181

13  n.1 (9th Cir. 2003).  Thus, as part of his duty to develop the record, the ALJ is required to

14  consider obesity in a multiple impairment analysis, but only where it is "clear from the record

15  that [the plaintiff's] obesity . . . could exacerbate her reported illnesses."  Id. at 1182; see also

16  Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing Celaya and concluding that

17  a multiple impairment analysis is not required where "the medical record is silent as to whether

18  and how claimant's obesity might have exacerbated her condition" and "the claimant did not

19  present any testimony or other evidence . . . that her obesity impaired her ability to work").

20          Plaintiff argues that, despite evidence in the record that he is obese, and despite

21  the ALJ's statement that he was not reducing his weight as instructed by his doctors, "the ALJ

22  failed to discuss what, if any, additional impact Mr. Harper's obesity had on his ability to

23  perform sustained work activity."  As in Burch, the court finds no error because plaintiff has not

24

25          [3]    Under SSR 02-01p, a person with body mass index ("BMI") of 30 or above is
    considered obese.  BMI is the ratio of an individual's weight in kilograms to the square of height
26  in meters (weight divided by square of height).

1  presented any evidence indicating that his weight impairs his ability to work.  While treating

2  doctors have advised plaintiff to reduce his weight, there is no evidence that any doctor opined

3  that plaintiff's weight was having a negative impact on his ability to work.

4       **D.**     **Plaintiff's Credibility**

5         The Commissioner determines whether a disability applicant is credible, and the

6  court defers to the Commissioner's discretion if the Commissioner used the proper process and

7  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

8  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

9  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

10  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

11  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

12  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

13  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

14  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

15  and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

16         If there is objective medical evidence of an underlying impairment, the

17  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

18  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

19  341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

20            The claimant need not produce objective medical evidence of the
[symptom] itself, or the severity thereof.  Nor must the claimant produce

21  objective medical evidence of the causal relationship between the
medically determinable impairment and the symptom.  By requiring that

22  the medical impairment "could reasonably be expected to produce" pain or
another symptom, the Cotton test requires only that the causal relationship

23  be a reasonable inference, not a medically proven phenomenon.

24  80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

25

26  / / /

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the   ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").   Daily

1  activities must be such that they show that the claimant is ". . .able to spend a substantial part of

2  his day engaged in pursuits involving the performance of physical functions that are transferable

3  to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

4  before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

5  Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

6  Regarding plaintiff's credibility, the ALJ stated:

7  The claimant testified that he is 48 years old, he earned a GED, and last
   worked in the roofing industry from 1997 to 2008 but has not worked
8  since March 3, 2008.  He lives with a friend.  He has a history of
   incarcerations.  He was fired from his job when the pain in his hands got
9  bad.  He indicated that he cannot work due to back, knee, hand numbness,
   and left shoulder pain which prevents him from working.  He has been
10 treating with Dr. Baron since September 2009 and he was treated by John
   Stack, a physician's assistant.  He was also treated by Dr. Burke for
11 degenerative disc and arthritis.  Methadone treatments have helped a little.
   He also has sleep apnea which has not improved.  He smokes one-half a
12 pack of cigarettes a day.  He also declined epidural treatment and he has
   had no physical therapy.  Sometimes, he goes to the emergency room for
13 pain.  Methadone is helping a little.

14 The claimant testified that his activities of daily living include waking up
   at 8 a.m., taking methadone, sitting on the couch, watching television, and
15 he stopped driving about 6 months ago.  His friend cooks and does the
   chores and cleaning.  It hurts his back and legs to walk and he had no
16 hobbies.  He receives General Assistance/Relief which pays for the food
   and rent.  He testified that his hand numbness prevents him from doing
17 chores, using a computer for more than 3 or 4 minutes, he can sit for only
   a few minutes, walk a block, lift 10 to 20 pounds 1 or 2 times, and he
18 sleeps about 4 hours a night because back pain wakes him up.
   Accordingly, he is drowsy during the day and occasionally nods off to
19 sleep.  Since July 2008 his back pain and hand numbness have gotten
   worse.

20
   After careful consideration of the evidence, the undersigned finds that the
21 claimant's medically determinable impairments could reasonably be
   expected to cause the alleged symptoms; however, the claimant's
22 statements concerning the intensity, persistence, and limiting effects of
   these symptoms are not credible to the extent they are inconsistent with the
23 above residual functional capacity assessment.

24 In terms of the claimant's alleged back pain, I find him less than fully
   credible.  He was examined by a Board Certified physical medicine and
25 rehabilitation physician who opined that he remains independent with
   mobility, self care, and activities of daily living (Ex. 2F/1)  It was also
26 opined that the claimant retains a good residual functional capacity for

11

basic work activity (Ex. 2F/4).  Although the claimant alleges to the contrary (Ex. 1E; 6E), the undersigned finds no evidence of a need for future back surgery, and the claimant has sought almost no emergency care due to excess pain complaints.  He testified that he is in constant pain but he has turned down alternative forms of treatment to relieve pain and he has not lost any weight since his alleged onset date against medical advice.  Treatment notes reflect that the claimant was not taking prescribed medication, he was not doing prescribed range of motion or strengthening exercises, and he was not reducing his weight against medical advice (Ex. 13F/3, 4).  Although the undersigned partly credits the claimant's allegations of pain, it is noted that the claimant was treated by a neurosurgeon whose ultimate medical opinion did not include a surgical option, there was no clinical or diagnostic radiculopathy, diagnosis included only mild bilateral carpal tunnel syndrome, he opined that the claimant has no peripheral neuropathy, and he observed no dynamic instability on back flexion and extension (Ex. 11F).  The undersigned finds this reduces the claimant's credibility regarding the intensity of his subjective pain allegations.

Plaintiff argues that none of the reasons cited by the ALJ for rejecting his testimony are legitimate.  First, he argues that the ALJ's statement that Dr. Johnson reported that plaintiff remains independent with activities of daily living, mobility, and self-care mischaracterized the doctor's report and that the ability to do such tasks at one's own pace does not necessarily indicate an ability to perform work activities.  Second, plaintiff argues that the ALJ misstated the doctor's opinion by saying that Dr. Johnson concluded that plaintiff retains a "good residual functional capacity for basic work activity."  Third, plaintiff claims that the ALJ's finding that there was no evidence of a need for future back surgery does not equate to an absence of debilitating pain.   Fourth, plaintiff states that, contrary to the ALJ's suggestion that he turned down alternative forms of treatment because he was not in fact experiencing disabling pain, alternative treatment was turned down because he could not afford it.  Fifth, plaintiff argues that his inability to loose weight does not undermine his credibility.

Interestingly, plaintiff does not address the ALJ's statement that "[t]reatment notes reflect that the claimant was not taking prescribed medication" and that "he was not doing prescribed range of motion or strengthening exercises."  This is a valid basis for rejecting plaintiff's testimony.

1       **E.     <u>Vocational Expert Testimony</u>**

2              The ALJ may meet his burden under step five of the sequential analysis by

3       propounding to a vocational expert hypothetical questions based on medical assumptions,

4       supported by substantial evidence, that reflect all the plaintiff's limitations.  <u>See</u> <u>Roberts v.</u>

5       <u>Shalala</u>, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational

6       Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the

7       ALJ is required to obtain vocational expert testimony.  <u>See</u> <u>Burkhart v. Bowen</u>, 587 F.2d 1335,

8       1341 (9th Cir. 1988).

9              Hypothetical questions posed to a vocational expert must set out all the

10      substantial, supported limitations and restrictions of the particular claimant.  <u>See</u> <u>Magallanes v.</u>

11      <u>Bowen</u>, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

12      limitations, the expert's testimony as to jobs in the national economy the claimant can perform

13      has no evidentiary value.  <u>See</u> <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991).  While

14      the ALJ may pose to the expert a range of hypothetical questions based on alternate

15      interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

16      determination must be supported by substantial evidence in the record as a whole.  <u>See</u> <u>Embrey v.</u>

17      <u>Bowen</u>, 849 F.2d 418, 422-23 (9th Cir. 1988).

18             Plaintiff's argument that the ALJ erred with respect to hypothetical questions

19      posed to the vocational expert is derivative of the credibility argument discussed above.  Plaintiff

20      concludes that, had the ALJ properly assessed his credibility, the statements of debilitating pain

21      would have been accepted and such limitations should have been part of the hypothetical

22      questions posed to the vocational expert.  The court, however, finds no error with respect to the

23      ALJ's credibility analysis.

24      / / /

25      / / /

26      / / /

**V.  CONCLUSION**

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (Doc. 24) is denied;

2.  Defendant's cross-motion for summary judgment (Doc. 28) is granted; and

3.  The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 30, 2012

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

14